**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**THOMAS J. BERENGUER, M.D.**

    **Plaintiff,**

    v.                      Case No. 2:06cv190

**LINCOLN NATIONAL LIFE**
**INSURANCE COMPANY,**

    **Defendant.**

## OPINION AND ORDER

In this case, Plaintiff Thomas J. Berenguer ("Plaintiff" or "Berenguer") brought a three-count suit against Defendant Lincoln National Life Insurance Co. ("Defendant" or "Lincoln National") seeking declaratory relief and alleging breach of contract and bad faith for denial of disability benefits. Presently before the Court is Defendant's motion to dismiss Plaintiff's bad faith claim for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Defendant's Motion is **DENIED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

    **A.    Factual Background**

Starting in 1975, Berenguer practiced medicine as an obstetrician/gynecologist

---

[1] In ruling on a motion to dismiss, the Court must accept the Plaintiff's allegations as true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Therefore, the following summary is taken from allegations contained in Plaintiff's Complaint, which, for the purposes of a motion to dismiss, are taken as true.

("OB/GYN") in Norfolk, Virginia, treating pregnant and non-pregnant women, delivering babies, and performing surgery. In 1994, Berenguer purchased a disability income insurance policy ("the insurance policy") from Lincoln National for premiums in excess of $10,000 a year. In April 2000, Berenguer injured his right thumb while exercising at an exercise facility in Norfolk, which he claims caused him considerable pain and bruising at the time. Nevertheless, Berenguer continued his practice as an OB/GYN and did not seek medical treatment for his thumb until April 2003, when a hand surgeon, Frank Gwathney, diagnosed him with trapeziometacarpal arthritis secondary to trauma. Berenguer alleges that the condition of his thumb worsened over the next year and a half. In December 2004, Gwathney allegedly told Berenguer that he had become totally disabled in that he was no longer physically able to practice as an OB/GYN because he could no longer engage in physical activities required to diagnose and treat his patients. After receiving a similar diagnosis from a second hand surgeon, Berenguer filed a claim for total disability with Lincoln National in December 2004.

On April 19, 2005, Lincoln National told Berenguer that it would provide only partial disability benefits for a limited time while it completed its review of his claim for total disability. On July 22, 2005, Lincoln National informed Berenguer that it was denying his claim for total disability benefits, and that it was reducing his residual disability benefits to 30 percent on grounds that Berenguer's disability prevented him from performing only 30 percent of his occupational activities and that he was physically capable of performing the remaining 70 percent. Lincoln National refused Berenguer's appeal of its decision in December 2005.

Berenguer maintains that Lincoln National acted without any first-hand information

regarding Berenguer's medical condition.[2] Lincoln National based its denial on an occupational review performed by a family practitioner who served as Lincoln National's non-treating consultant, and upon the conclusions of an "unnamed" non-treating OB/GYN consultant. Berenguer claims that, according to Lincoln National, the OB/GYN consultant's opinion was that an experienced OB/GYN should be physically capable of conducting a gynecological practice that includes performing various procedures while using only one hand.  According to Berenguer, Lincoln National refused to disclose the name of the OB/GYN consultant or provide him with a copy of either consultant's report.  Berenguer also maintains that Lincoln National told him that the only information about Berenguer that it gave to the consultants was his occupational duties, and that medical information about Berenguer had been redacted.[3]

Allegedly, Lincoln National's denial of benefits also relied on a report from an unidentified orthopedic surgeon who had reviewed Berenguer's claims, but the defendant did not disclose this report to Berenguer.  The orthopedic surgeon's report identified certain "restrictions and limitations" on Berenguer's physical abilities, according to a December 7, 2005, letter to Berenguer upholding the denial of coverage in which Lincoln National first revealed the existence of the orthopedic surgeon's report.  Berenguer requested an opportunity to review the information upon which the denial was based, including the orthopedist's report; Lincoln National refused.  In a December 20, 2005, letter, Lincoln National stated:

---

[2] Lincoln National admitted in its answer that it did not have Berenguer undergo an independent medical examination, but denies Berenguer's allegations that it acted without first-hand information.

[3] Lincoln National denies the allegations that the only information provided to consultants concerned Berenguer's occupational duties.

> We are in receipt of your letter dated December 8, 2005 in which you requested all the information upon which [we] relied in denying the appeal of your claim for total disability benefits . . . . [W]e respectfully decline your request.

Lincoln National refused to produce the report, claiming that its contents were proprietary.

### B. Procedural Background

Berenguer filed a complaint in the Circuit Court of the City of Norfolk on March 10, 2006. After filing an answer in the state court, on April 4, 2006, Lincoln National removed the case to this Court because the matter fell within the diversity jurisdiction of the federal courts. See 28 U.S.C. §§ 1332, 1441, 1446 (2000).

### C. Causes of Action

Berenguer alleges that Lincoln National's denial of benefits for total disability was a violation of his insurance policy. His complaint consists of three causes of action. First, he seeks declaratory relief of his rights under the insurance policy and affirmation of his position that he is totally disabled within the meaning of the policy. Second, Berenguer asserts that Lincoln National breached its contract under the policy by failing to pay him $92,000 in allegedly past-due total disability benefits. In addition to the $92,000 that Berenguer seeks in compensatory damages, he seeks to recover future benefits and reimbursement of premiums from the onset of his disability in December 2004 to the conclusion of this case. Berenguer's third cause of action, which is the subject of the motion to dismiss before the Court, alleges that he is entitled to recover attorney's fees and costs under Va. Code Ann. § 38.2-209(A) on grounds that Lincoln National's denial of his benefits was in bad faith.

## II. MOTION TO DISMISS

### A. Legal Standard

#### 1. Rule 12(b)(6) Motion

Lincoln National has moved to dismiss Plaintiff's bad faith claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which permits federal courts to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). The court "must accept [the plaintiff's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); accord Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 248 (4th Cir. 2005).

Although Lincoln National was procedurally incorrect in designating its motion to dismiss under Rule 12(b)(6) because it had already filed a responsive pleading, the Court need not deny the motion on this basis. Rule 12(b) provides that "[a] motion making any [Rule 12(b)] defenses shall be made before pleading if a further pleading is permitted." Fed. R. Civ. P. 12(b). However, Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be made "by motion for judgment on the pleadings, or at trial on the merits." Fed. R. Civ. P. 12(h)(2). Because Lincoln National filed an answer in state court before removing the case to federal court, the pleadings were closed at the

5

time of its motion.[4] The Court will therefore construe the motion as one for judgment on the pleadings under Rule 12(c) raising the defense of failure to state a claim upon which relief can be granted. See Burbach Broad. Co. of Del. v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002). Treating the defendant's motion as a Rule 12(c) motion makes no practical difference, as the standard for a 12(c) motion is the same as the standard for a motion brought under 12(b)(6). See id; Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); Shooting Point, L.L.C. v. Cumming, 238 F. Supp. 2d 729, 735 n.4 (E.D. Va. 2002) ("[A]s a practical matter, it is irrelevant whether the court considers [the] motion as one brought under Rules 12(b)(6) or 12(c) because the standard of review is identical."). To uphold a dismissal under Rule 12(c),[5] the court "must find beyond a doubt that Plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Bruce v. Riddle, 631 F.2d 272, 273-74 (4th Cir. 1980); Zeran v. Am. Online, Inc., 958 F. Supp. 1124, 1128 (E.D. Va. 1997). "All reasonable inferences" are drawn in favor of the plaintiff. Id.

---

[4] As Lincoln National points out, it asserted in its answer that Count III of Plaintiff's complaint "fails to state a claim upon which relief can be granted and should be dismissed with prejudice." See Answer at ¶ 44.

[5] Fed. R. Civ. P. Rule 12(c), Motion for Judgment on the Pleadings, provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

### 2. Applicable Law

When a case is removed from state to federal court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1441(a), the federal court must apply the substantive law of the state where the claim arose, and the federal procedural law. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996); Chapman v. Clarendon Nat. Ins. Co., 299 F. Supp. 2d 559, 562 (E.D. Va. 2004). A court sitting in diversity must interpret the law in accordance with the law of the highest state court, or where the law is unclear, as it appears that the highest state court would rule. See Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999); Brunswick Corp. v. Long, 392 F.2d 337, 341-42 (4th Cir. 1968) (interpreting South Carolina law in accordance with the South Carolina Supreme Court's case law). In this case, there is no dispute that Virginia law applies, as the claims pled in the complaint involve an insurance policy initiated in Virginia in the name of a policyholder residing in Virginia.

### B. Motion to Dismiss Bad Faith Claim

Lincoln National moves to dismiss Plaintiff's bad faith claim on grounds that it is not cognizable under Virginia law. In Count III of his complaint, Berenguer asserts a claim for costs and attorneys' fees under Va. Code Ann. § 38.2-209(A) on grounds that the defendant denied his claim for disability benefits in bad faith. Va. Code Ann. § 38.2-209(A) provides:

> [I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy or fidelity bond or to the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

Lincoln National contends that dismissal is warranted because § 38.2-209(A) does not

prescribe a private cause of action for bad faith. Lincoln National also notes that Berenguer cannot ground his claim in tort law because claims brought in Virginia based on a denial of insurance coverage are governed by contract law, not tort law. Berenguer responds that his bad faith claim falls under § 38.2-209(A), not under tort law, and argues that the statute provides a cause of action under which an insured can recover costs and attorneys' fees. Berenguer argues that because his claim relates to damages its resolution should be reserved until after a trial on the merits. Pl.'s Mem. in Opp'n 3. Lincoln National does not address Berenguer's suggestion that the question of attorneys' fees be postponed, and instead simply asks this Court to dismiss Count III with prejudice.

### 1.  Attorneys' Fees Under Va. Code Ann. § 38.2-209

Under Virginia law, "[i]t is well settled that as a general rule, in the absence of any contractual or statutory liability therefor . . . expenses incurred by the plaintiff in the litigation of his claim against the defendant . . . are not recoverable as an item of damages in action *ex contractu*." Hiss v. Friedberg, 112 S.E.2d 871, 876 (Va. 1960); accord Moorehead v. State Farm Fire & Cas. Co., 123 F. Supp. 2d 1004, 1008 (W.D. Va. 2000). Virginia law does not provide a remedy in tort for an insurer's refusal in bad faith to honor a first-party insurance claim. A&E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 676 (4th Cir. 1986), cert. denied, 479 U.S. 1091 (1987) (holding that "in a first-party Virginia insurance relationship, liability for bad faith refusal is a matter of contract rather than tort law").

Recognizing this precedent, Berenguer bases his claim upon § 38.2-209(A), which provides for the award of attorneys' fees to an "insured individual" in conjunction with a "sui[t against] his insurer to determine what coverage, if any, exists under his present policy" if the

"court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy." § 38.2-209(A). The statute is "remedial in nature" and is "designed to punish an insurer guilty of bad faith in denying coverage or withholding payment and to reimburse an insured who has been compelled by the insurer's bad-faith conduct to incur the expense of litigation." Cuna Mut. Ins. Soc. v. Norman, 375 S.E.2d 724, 726 (1989) (applying reasonableness standard).

Contrary to Berenguer's contention that the statute prescribes a "bad faith cause of action," § 38.2-209 "does not create a separate cause of action; rather, any claim under the statute must stem from a suit that already exists." U.S. Airways, Inc. v. Commonwealth Ins. Co., 64 Va. Cir. 408, 2004 WL 1094684, at *9 (2004) (unpublished opinion);[6] accord Salomon v. Transamerica Occidental Life Ins. Co., 801 F.2d 659 (4th Cir. 1986); A&E Supply, 798 F.2d at 673-74 (holding that the Virginia Unfair Insurance Practices Act, Va. Code Ann. § 38.1-49 *et seq.*, "does not establish a private cause of action"). Rather, "[t]he rule in Virginia is that an insured may recover against an insurer only after a judgment has been entered against the insurer for failure to settle the claim." U.S. Airways, 2004 WL 1094684, at * 9. Accordingly, Berenguer "cannot in this current litigation, claim a wholly separate cause of action for bad faith under [his] policy." Id.

The fact that the statute does not provide a cause of action does not preclude Berenguer from invoking it as a means of recovering attorneys' fees. To prevail under § 38.2-209

---

[6] Unpublished opinions "do not constitute binding precedents" in this Circuit and are to be cited "[o]nly in unusual circumstances." Hupman v. Cook, 640 F.2d 497, 501 (4th Cir. 1981) ("An unpublished opinion may be cited for what precedential value it may have"). See United States v. Armstrong, 30 F. Supp. 2d 901, 903 n.4 (E.D. Va. 1998) ("[S]uch opinions are generally entitled only to the weight generated by the persuasiveness of their reasoning").

Berenguer must show, first, that he is an "insured individual." Second, he must show that he is "su[ing] his insurer to determine what coverage, if any, exists under his present policy." Third, Berenguer "must show that Defendant acted in bad faith in refusing to make payment to the insured." Cradle v. Monumental Life Ins. Co., 354 F. Supp. 2d 632, 635 (E.D. Va. 2005). It is clear that Berenguer is an "insured individual" and that he is "su[ing] his insurer to determine what coverage, if any, exists under his present policy." For reasons that follow, the Court **FINDS** that resolution of whether Lincoln National was "not acting in good faith" when it denied him full disability coverage must be preserved if and until "after a judgment has been entered against the insurer for failure to settle the claim." U.S. Airways, 2004 WL 1094684, at * 9.

### 2. Attorneys' Fees Issue Deferred Until After Judgment

In urging the Court to dismiss Berenguer's claim with prejudice, Lincoln National overlooks the fact that courts interpreting § 38.2-209 have consistently deferred the determination of whether the insurer acted in "good faith," and thus whether attorneys' fees are recoverable, until after reaching a judgment in the underlying action against the insurer. See Cuna Mut. Ins. Soc., 375 S.E.2d at 726-27 (reversing award of attorneys' fees made by judge after trial under § 38.1-32.1, now § 38.2-209); Moorehead, 123 F. Supp. 2d at 1008 (denying defendant's motion for summary judgment and stating, "[I]f the plaintiff's claims are successful and upon application by the plaintiffs after trial, I will consider an award of such costs pursuant to [§ 38.2-209] according to the proof shown at trial."); Styles v. Liberty Mut. Fire Ins., No. 7:06cv00311, 2006 WL 1890104, at *1 (W.D. Va.) (Turk, J.) ("[A]n award of fees and costs under [§ 38.2-209] cannot be adjudicated until a decision has been issued on the breach of contract claim.").

Lincoln National relies on the Circuit Court of Virginia's holding in U.S. Airways that a plaintiff cannot claim a "wholly separate cause of action for bad faith" for the proposition that Berenguer's claim is not cognizable under Virginia law and must be dismissed with prejudice. Lincoln National's reasoning is flawed for several reasons. For one thing, U.S. Airways, after finding the insured's § 38.2-209 claim to be "premature" because a judgment had not been entered, granted summary judgment and dismissed the claim *without* prejudice. 2009 WL 1094684, at *9. Moreover, the proposition in U.S. Airways that a pre-judgment § 38.2-209 claim should be dismissed without prejudice is itself problematic, as it "creates a troubling paradox as to how and when a petitioner must raise the issue of fees and costs under the statute." See Styles, 2006 WL 1890104 at *2 (noting that "no Virginia Supreme Court opinion" has held that a fee request claim must be dismissed until after a judgment on the contract claim). This Court agrees with the district court in Styles that "the plain language of the statute makes clear that the fee request be brought within the same suit as the substantive claim," id. at *3, and therefore the plaintiff's § 38.2-209 claim need not be dismissed. Id. Rather, "[s]uch a request must be made in the complaint, although it is not considered until the denouement of the case." Id. See Atl. Permanent Fed. Savings & Loan Ass'n v. Am. Cas. Co. of Reading, Pa., 670 F. Supp. 168, 170 (E.D. Va. 1986) (J. Clarke) (refusing to dismiss § 38.2-209 claim on summary judgment because "it is proper for the plaintiff to alternatively seek" attorneys' fees in a separate count in the complaint).

  Having decided that dismissal is not warranted, the Court next considers Berenguer's request that his bad faith claim be adjudicated only after trial and only subsequent to a judgment in his favor on his underlying claims. "The rule in Virginia is that an insured may recover against

an insurer only after a judgment has been entered against the insurer for failure to settle the claim." U.S. Airways, 2004 WL 1094684, at * 9; see Wells v. The Travelers Ins. Co., 26 Va. Cir. 296, 1992 WL 884487, at *6 (Va. Cir. Ct. 1992) (deciding fees issue along with granting summary judgment for plaintiff on the merits) overruled on other grounds by Evans v. State Farm Mut. Ins. Co., 33 Va. Cir. 411 (Va. Cir. 1994); Nationwide Mut. Ins. Co. v. St. John, 524 S.E.2d 649, 651 (Va. 2000) (noting that § 38.2-209 is brought as a declaratory judgment action brought by the insured against the insurer); accord Cradle, 354 F. Supp. 2d at 635 (following U.S. Airways and holding that a § 38.2-209 claim "may only be brought once a judgment is entered against the Defendant"). Only in the event that Plaintiff prevails on his declaratory judgment and contract claims will the Court reach the attorneys' fees issue. See Moorehead, 123 F. Supp. 2d at 1008 (denying motion for summary judgment as it relates to plaintiff's claim for attorney fees under § 38.2-209); Estate of Muhamed v. Monumental Life Ins. Co., 138 F. Supp. 2d 709, 722 (E.D. Va. 2001) (following a bench trial, denying plaintiff's claim for attorneys' fees under § 38.2-209 due to insufficient evidence of bad faith). Cf. HHC Assocs. v. Assurance Co. of Am., 256 F. Supp. 2d 505, 510 (E.D. Va. 2003) (Beach Smith, J.) (granting summary judgment for defendant on plaintiff's bad faith claim on grounds that the plaintiff submitted "no evidence of acts showing bad faith").

Consequently, the Court **ORDERS** that Berenguer's request for costs and attorneys' fees under the statute be severed from the action, to be adjudicated only after judgment on the merits of Plainiff's other claims and only if there is a judgment in Plaintiff's favor. In the event that holding a separate trial on Plaintiff's request for attorneys' fees following trial becomes necessary, the Court reserves the right, in its discretion, to order a separate trial pursuant to

Federal Rule of Civil Procedure 42(b).[7] Therefore, the defendant's Motion to Dismiss Count III is **DENIED**.

The Clerk of the Court is **DIRECTED** to provide a copy of this to all counsel of record.

**IT IS SO ORDERED.**

/s/

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 13, 2006

---

[7]Fed. R. Civ. P. Rule 42(b), Separate Trials, provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.